UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MONTE McFALL, et al.,

        Plaintiffs,

    v.

COUNTY OF SAN JOAQUIN, et al.,

        Defendants.

No. 2:17-cv-0847-KJM-AC

ORDER

        Plaintiffs allege defendants violated federal and state law when they fraudulently obtained a warrant to search plaintiffs' residence and later seized plaintiffs' property while executing that search warrant. As explained below, defendants' motion to dismiss is GRANTED with leave to amend.

I.     BACKGROUND

        This case arises from the search and seizure of personal property by County of San Joaquin, City of Stockton and Officer Jimmy Fritts from plaintiffs Monte McFall and Patricia Hutchison's property. *See generally* First Am. Compl. ("FAC"), ECF No. 10. Plaintiffs, who are longtime partners and senior citizens, were tenants of 1400 and/or 1410 Frewert Road, Lathrop, California 95330. *Id.* ¶¶ 9, 10, 19. Other tenants also resided at the 1400 Frewert Road property, which is a zoned agricultural area in San Joaquin County. *Id.* ¶¶ 18-19.

/////

On an unspecified date, while investigating an unrelated matter, Officer Jimmy Fritts, who works for either or both the San Joaquin Sheriff's Department and the Stockton Police Department, discovered marijuana growing at the 1400 Frewert Road property. *Id.* ¶¶ 12, 17-18. McFall is well known among County law enforcement officials, *id.* ¶ 24, and Fritts wanted to arrest and prosecute him, *id.* ¶ 19. Fritts therefore falsely stated in affidavits for search and arrest warrants that McFall owns the Frewert Road property even though Fritts knew that Stagecoach, Inc., not McFall, owns the property. *Id.* ¶ 20. Fritts also obtained the warrants by invoking County ordinance 4-10006, which declares marijuana cultivation a nuisance, while omitting any reference to the County's "Farmer's Right to Grow Act." *Id.* ¶ 20; *see* Defs.' Ex. H, ECF No. 19-2 at 61 (County Ordinance 4-10006). County ordinance 6-9002, which plaintiffs term the Farmers Right to Grow Act, provides:

> No agricultural operation or activity, nor any facility or appurtenances thereof, conducted or maintained for commercial purposes, and in a manner consistent with proper and accepted customs and standards as established and followed by similar agricultural operations in the County, shall be or become a nuisance, private or public, if it was not a nuisance at the time it began.

Defs.' Supp'l Ex. A, ECF No. 22-2; *see* FAC ¶ 20 (referring to Farmer's Right to Grow Act without providing its language). Plaintiffs allege "any marijuana grown on the[ir] property would have been legal at the time, and stayed legal under the Farmer's Right to Grow Act . . . ." FAC ¶ 20.

Fritts executed the warrant, searching plaintiffs' residence on November 5, 2015. *Id.* ¶ 21. Plaintiffs were tightly handcuffed and left sitting in the sun for several hours during the search. *Id.* ¶¶ 62-67. During the search, Fritts claimed that plaintiffs' bell pepper and cucumber plants were marijuana plants to justify seizing $16,000 in cash from plaintiffs' safe. *Id.* ¶ 21. Fritts did not take samples of the plants to confirm they are marijuana, nor was he trained to identify marijuana plants or to properly preserve evidence. *Id.* ¶¶ 21, 47, 51. Defendants have refused to return plaintiffs' money and have demanded plaintiffs drop any suit against Fritts to have the money returned. *Id.* ¶ 96. After the search and seizure, McFall contacted "Chief District Attorney Officer Dirkson" to file a formal complaint against Fritts. *Id.* ¶ 22. Dirkson

refused to record a formal complaint until he discussed the situation with Tori Salazar.[1] *Id.* McFall never heard from Dirkson again. *Id.*

Plaintiffs filed a claim for damages with the County and the City on October 18, 2016. *Id.* ¶¶ 4-5. The County denied the claim on October 24, 2016, *id.* ¶ 6, and the City denied it on November 7, 2016, *id.* ¶ 7. Plaintiffs sued on April 23, 2017, and later filed a first amended complaint alleging they were injured by Fritts' and Dirkson's illegal activities as well as "the policies, procedures, customs and practices, and directions of the leaders of supervisory officials, of the San Joaquin County Sheriff's Office, the San Joaquin County District Attorney's Office, and the Stockton Police Department." *Id.* ¶¶ 8, 23, 28. Plaintiffs bring six claims: (1) unconstitutional search and seizure of property and persons under 42 U.S.C. § 1983 against all defendants; (2) violation of the Bane Act, Cal. Civ. Code § 52.1, against the County; (3) conversion against Fritts and the County; (4) false arrest against all defendants; (5) trespass against all defendants; and (6) invasion of privacy under the California Constitution against all defendants. *See* FAC.

Defendants move to dismiss plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), Mot., ECF No. 19, plaintiffs oppose, and request leave to amend, attaching a proposed second amended complaint, Opp'n & Ex. F (Proposed SAC). Defendants replied. Reply, ECF No. 22. The court submitted the motion without oral argument under Local Rule 230(g) and resolves it here.

II.     REQUESTS FOR JUDICIAL NOTICE

The court GRANTS defendants' unopposed requests for judicial notice of the following documents: Exhibit A: January 23, 2012 Statement of Information of Stagecoach, Inc. filed with the California Secretary of State; Exhibit B: September 3, 2017 Statement of Information of Stagecoach, Inc. filed with the California Secretary of State; Exhibit H: County Ordinance 4-10006; Exhibit I: Ordinance No. 4462 from the California State Sheriffs' Association; and Supplemental Ex. A: County Ordinance 6-9002. These exhibits are publicly

---

[1] The complaint does not identify Tori Salazar's position or otherwise explain her significance in this case.

3

filed and their existence is "accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and are therefore properly subject to judicial notice. *See* Fed. R. Evid. 201(b)(2). Because the rest of defendants' exhibits are irrelevant to resolution of the instant motion, defendants' request that the court judicially notice those documents is DENIED.

III. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint,

| | |
|---|---|
| 1 | *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's |
| 2 | consideration of documents attached to a complaint or incorporated by reference or matter of |
| 3 | judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United* |
| 4 | *States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d |
| 5 | 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, |
| 6 | 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to |
| 7 | dismiss, generally court is limited to face of the complaint on 12(b)(6) motion). |

IV. DISCUSSION

    A.    Unconstitutional Search Claim

Plaintiffs allege defendants violated their Fourth Amendment right against unreasonable searches, FAC ¶¶ 29-41.  Specifically, plaintiffs allege the search warrant at issue here was obtained through judicial deception because Fritts allegedly "falsely stated on his affidavit" that plaintiffs violated an ordinance not yet in effect.  *Id.* ¶ 32.  But they now acknowledge ordinance 4-10006 was in effect during the relevant period and abandon that claim in their opposition.  Opp'n at 17-18.  Plaintiffs also allege that Fritts "lied on his affidavits . . . , claiming Monte McFall owned the property" despite "knowing that Stage Coach, Inc., owned the property."  FAC ¶ 20.  Defendants countered, noting plaintiffs concede they resided at the property and requesting judicial notice of documents indicating plaintiffs are the executive officers of Stage Coach, Inc.  *See* Mot. at 17-18; RJN Exs. A & B.  Plaintiffs made no response and appear to have abandoned that theory.  *See* Opp'n; *see also* Prop. SAC, ECF No. 21-8, at 10 (deleting FAC ¶ 20).  Plaintiffs continue to allege the warrant was "procured through fraud" because the Farmer's Right to Grow Act made it legal to grow marijuana on the property.  FAC ¶ 32; Opp'n at 17-18.

Generally, a person who knowingly or recklessly includes false statements or omits material facts in an affidavit to obtain a warrant application may be liable under § 1983 for a Fourth Amendment violation.  *Butler v. Elle*, 281 F.3d 1014, 1024-26 (9th Cir. 2002).  To state a claim for judicial deception, "a § 1983 plaintiff must [allege] that the investigator 'made deliberately false statements or recklessly disregarded the truth in the affidavit' and the

falsifications were 'material' to the finding of probable cause." *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (quoting *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995)).

        Here, plaintiffs have not satisfied either *Galbraith* prong. Instead, they allege only that the Farmer's Right to Grow Act made marijuana cultivation "legal" and Fritts fraudulently failed to disclose that Act in his affidavit. *See* FAC ¶¶ 32, 35. As pled, this an implausible theory. Plaintiffs' proposed second amended complaint, which the court considers only in determining whether to grant leave to amend, expands on this theory but adds little clarity, legally speaking. There, plaintiffs include the specific language of the Farmer's Right to Grow Act, allege that their marijuana cultivation began before the County declared marijuana growth a nuisance, that the cultivation was for commercial purposes and was conducted in a manner consistent with other marijuana cultivation operations. Prop. SAC ¶¶ 34-36, 54. Accordingly, in their view, the Act granted them "rights" and "grand fathered [sic] in" their marijuana cultivation, and Fritts illegally "failed to disclose the Farmer's Right to Grow Act to persuade a Judge to issue the warrant," which "caused Plaintiffs' residence to be illegally searched and their property to be illegally seized. *See id.* ¶¶ 57, 61, 62.

        Nothing in plaintiff's allegations indicates they grew marijuana lawfully prior to the Farmer's Right to Grow Act or that their operation was an "agricultural operation or activity" embraced by that Act. If their bare allegations were deemed sufficient, the Farmer's Right to Grow Act would presumably render most if not all marijuana cultivation in San Joaquin County "legal." Put differently, plaintiffs' meager allegations do not render their claim plausible. *See Iqbal*, 556 U.S. at 678. This is not to say the court accepts defendants' argument that because marijuana is illegal under federal law, plaintiffs cannot possibly state a constitutional claim. *See* Reply at 2, 5; *see also, e.g.*, *Demoura v. Ford*, No. 1:09-CV-01344-OWW, 2010 WL 5426850, at *7 (E.D. Cal. Dec. 27, 2010) (finding plaintiff sufficiently alleged defendant officer intentionally omitted material information regarding plaintiff's substantial compliance with California's Medical Marijuana Program Act in order to mislead the state magistrate issuing warrant); *Allen v. Kumagai*, 356 F. App'x 8, 9 (9th Cir. 2009) ("Although [plaintiff] cannot use § 1983 to vindicate

his purported state-law right to use marijuana for medical purposes, the officers' knowledge of his medical authorization may be relevant to whether they had probable cause to believe he had committed a crime."). Rather, the court finds plaintiffs' allegation a local ordinance granted them the right to grow marijuana on their property without government interference is a legal conclusion that need not be accepted as true and which has not been buttressed by sufficient factual allegations to state a claim.

Plaintiffs' unlawful search claim is DISMISSED with leave to amend, to the extent amendment is consistent with Federal Rule of Civil Procedure 11.

### B. Unconstitutional Seizure Claim

Plaintiffs allege Fritts unconstitutionally seized their property[2] after falsely identifying cucumber and bell pepper plants as marijuana plants and without taking samples of the cucumber and bell pepper plants for testing. FAC ¶¶ 46-47.

Plaintiffs' unlawful seizure claim is, again, implausible and must be dismissed. Plaintiffs allege Fritts found and took samples of marijuana plants on plaintiffs' property. *Id.* ¶ 21. Although plaintiffs appear to allege Fritts seized their funds based purely on his discovery of cucumber and bell pepper plants on their property, they do not explain why Fritts' discovery of marijuana on the property did not justify the seizure. In short, plaintiffs have not plausibly alleged the seizure was unlawful in light of Fritts' alleged discovery and seizure of marijuana on the property, regardless of whether Fritts also found and misidentified plaintiffs' cucumber and bell pepper plants.

Plaintiffs' proposed second amended complaint would add other unlawful seizure claims. Prop. SAC ¶¶ 93-108. The court will not prematurely address the merits of those claims. Accordingly, defendants' motion to dismiss plaintiffs' unlawful seizure claim is GRANTED with leave to amend, to the extent amendment is consistent with Rule 11.

/////

---

[2] Although plaintiffs alleged defendants conducted an unlawful seizure of persons, FAC ¶¶ 58-79, they withdrew that claim in their opposition, Opp'n at 14, and the claim is DISMISSED without leave to amend.

7

C. *Monell* Claims

Municipalities may be held liable as "persons" under 42 U.S.C. § 1983, but not for the unconstitutional acts of their employees based solely on a respondeat superior theory. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-95 (1978). Rather, to hold a local government liable under 42 U.S.C. § 1983, the plaintiff must show that the defendant's policy, practice, or custom was "a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). Accordingly, a plaintiff seeking to impose liability on a municipality under § 1983 is required to sufficiently allege the local government's liability under at least one of three theories: (1) the "execution of a government's policy or custom, [] made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury"; *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (citations omitted; second alteration in original); (2) the local government's failure to train or failure to supervise employees "amounts to 'deliberate indifference' to a constitutional right," *id.*; *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989); or (3) "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it," *Rodriguez*, 891 F.3d at 802-03 (citations omitted).

Because plaintiffs have not sufficiently alleged a constitutional violation, their *Monell* claim cannot proceed. *Long v. City & Cty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007) ("If no constitutional violation occurred, the municipality cannot be held liable . . . ."). Moreover, although plaintiffs allege defendants have a policy that "encourages the use of liberally seizing currency through asset forfeiture proceedings to assist the Metro's budget," FAC ¶¶ 53-54, they do not address this allegation in defending their *Monell* claim and abandon that allegation in their proposed second amended complaint. *See* Opp'n at 11-14; Prop. SAC at 19.

Further, plaintiffs advance insufficient failure to train theories. *See* FAC ¶¶ 37-38, 49-50 (alleging defendants "failed to keep their employees up to date with current laws and applicable local laws, . . . . [and] failed to audit or review [officers'] applications for search or arrest warrants"); *id.* ¶¶ 51-52 (alleging defendants' training is "not adequate to prevent its

8

employees from depriving citizens of their Constitutional rights or properly handling the usual routine task of seizing personal property during a search" and defendants did not "train their employees on how to property [sic] identify marijuana plants and how to properly preserve evidence used to justify the seizure of personal property"); *id.* ¶¶ 71-72 (alleging defendants' training does not prepare officers to "properly apply for search, and, or, [sic] arrest warrants"); *id.* ¶¶ 85-86 (alleging defendants' training policies "were not adequate to allow its employees to know that the it [sic] is illegal to use criminal proceedings to gain leverage in civil lawsuits").

These allegations do not allege a "program-wide inadequacy in training" supporting an inference that the municipal defendants were deliberately indifferent. *See Smith-Downs v. City of Stockton*, No. 2:10-cv-02495-MCE-GGH, 2012 WL 671932, at *9 (E.D. Cal. Feb. 29, 2012) ("Absent evidence of a 'program-wide inadequacy in training, any shortfall in a single officer's training can only be classified as negligence on the part of the municipal defendant—a much lower standard of fault than deliberate indifference.") (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)); *Estate of Adomako v. City of Fremont*, No. 17-CV-06386-DMR, 2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018) (finding allegations that defendant police department maintained policy of shooting unarmed individuals and then justifying shooting by alleging suspect was violent or reached for officer's weapon, among other allegations, did not state *Monell* claim without supporting factual allegations beyond those specific to that case); *Roy v. Contra Costa Cty.*, No. 15-CV-02672-TEH, 2016 WL 54119, at *6 (N.D. Cal. Jan. 5, 2016), *aff'd*, 694 F. App'x 536 (9th Cir. 2017) (plaintiff's failure to train theory could not survive without "a single additional example of such unconstitutional behavior by [the defendant officer] (or anyone else) nor a shred of evidence that officers were not actually trained to properly apply the probable cause standard"); *Rodelo v. City of Tulare*, 1:15-cv-01675-KJM-BAM, 2016 WL 561520, at *3-4 (E.D. Cal. Feb. 12, 2016) (dismissing *Monell* claim where complaint contained only conclusory failure to train allegations and did not identify inadequacies of training practices).

Defendants' motion to dismiss the first claim as to *Monell* liability is GRANTED, with leave to amend if amendment within the confines of Rule 11 is possible.

D. State Law Claims

Where all federal claims are dismissed in an action containing both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Notrica v. Bd. of Supervisors of Cty. of San Diego*, 925 F.2d 1211, 1213-14 (9th Cir. 1991); *see Jiang v. Lee's Happy House*, No. C 07-03606 RS, 2007 WL 3105087, at *3 (N.D. Cal. Oct. 23, 2007) ("[T]he Court declines to exercise supplemental jurisdiction over the state law claims unless and until a federal claim is adequately pleaded."). As discussed above, the court has dismissed the only federal claims in this lawsuit. Accordingly, at this juncture, the court DECLINES to exercise supplemental jurisdiction over plaintiffs' state claims. The state law claims are DISMISSED but may be renewed in a new second amended complaint alleging viable federal claims.

V. CONCLUSION

Defendants' motion to dismiss is GRANTED. Plaintiffs may file a second amended complaint consistent with this order within 21 days.

IT IS SO ORDERED.

DATED: October 30, 2018.

_____
UNITED STATES DISTRICT JUDGE